IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| F. MICHAEL CRANE,<br><br>      Plaintiff,<br><br>v.<br><br>THE MEMORIAL HOSPITAL,<br><br>      Defendant. | Case No. 1:08-CV-59-DAK<br><br><br><br>**ORDER AND REPORT AND RECOMMENDATION** |

Before the court is a Motion to Dismiss filed by Defendant The Memorial Hospital. (Docket Entry #7.) Defendant argues that Plaintiff's complaint should be dismissed for lack of personal jurisdiction and improper venue. *See* Fed. R. Civ. P. 12(b)(2) & 12(b)(3). Also before the court is Plaintiff's Motion for Leave to File Supplemental Memorandum (Docket Entry #25.)

Having carefully considered the parties' memoranda and oral arguments, the court orders that Plaintiff's motion for leave to file supplemental memorandum be denied and recommends that Defendant's motion to dismiss be granted.

**BACKGROUND**

Plaintiff's complaint asserts a claim for breach of contract against Defendant. This claim arises from Defendant's contract with Plaintiff to provide physician services.

Defendant is a 25-bed critical access county hospital located in Craig, Colorado. (Docket Entry #8-2, Affidavit of Barry Bergman.) Craig, located in northwest Colorado, is approximately 80 miles from Utah's border and 40 miles from Wyoming's border. Defendant is accredited by the Joint Commission on Accreditation of Hospitals (hereafter "JCAHO") and is licensed only in Colorado. (Docket Entry #8-2.) Defendant contests that as a county hospital, it provides services primarily to Moffat County, Colorado residents and does not solicit patients from or advertise its services in Utah. (Docket Entry #8-2.)

Defendant first contracted with Plaintiff in 2003 (hereafter "2003 Contract"). To perform pursuant to the 2003 Contract, Plaintiff moved with his family to Craig, Colorado in 2003. (Docket Entry #1, Complaint, ¶ 4.) On September 11, 2003, Plaintiff received a license from the Colorado Board of Medical Examiners (hereafter "BME") to practice medicine in Colorado. (Docket Entry #8-3, Individual Medical Information of Franklin M. Crane.)

In the Fall of 2005, Defendant and Plaintiff entered into another contract (hereafter "2005 Contract"). (Docket Entry #8-

2

4, OB/GYN Contract for Professional Services.)  At the time the 2005 Contract was negotiated, Plaintiff was licensed in Colorado and had been living in Craig for two years.  It is undisputed that the 2005 Contract was negotiated and executed in Craig, Colorado.

According to the 2005 Contract, Defendant's mission is to "mee[t] the medical needs of the citizens of its service area," and it retained Plaintiff in furtherance of that mission.  (Docket Entry #8-4, ¶ 1.01.)  The 2005 Contract provides that, in entering into the contract with Plaintiff, Defendant wished to "assist [Plaintiff] in maintaining of a full-time practice of OB/Gynecology in Craig and for Northwest Colorado."  (Docket Entry #8-4, ¶ 1.01, emphasis added.)  The 2005 Contract also provides that Plaintiff will perform administrative functions.  (Docket Entry #8-4, ¶ 1.01.)  Furthermore, the 2005 Contract provides that Plaintiff "agrees to engage in . . . a full-time practice in the specialty of Gynecology in Craig, Colorado."  (Docket Entry #8-4, ¶ 3.01, emphasis added.)  Under the terms of the 2005 Contract, Plaintiff agreed to "achieve and/or maintain an unrestricted license to practice medicine in the State of Colorado."  (Docket Entry #8-4, ¶ 3.03, emphasis added.)  The 2005 Contract does not require Plaintiff to maintain licensure in any other state.  It does require that Plaintiff establish and maintain residency in Moffat County, Colorado.  (Docket Entry #8-4, ¶ 3.06.)

Defendant and Plaintiff performed their duties and obligations under the 2005 Contract in Colorado, primarily benefiting Colorado residents.  Throughout the effective dates of the 2005 Contract, Plaintiff maintained a residence in Craig, Colorado and provided obstetrical and gynecological services at an office in Craig to patients primarily from Craig, Moffat County, and greater Northwestern Colorado.  (Docket Entry #8-2, ¶ 7.)  At the time the 2005 Contract was terminated, Plaintiff continued to maintain his residence in Craig.  According to Defendant, at no time during the effective dates of the 2005 Contract did Defendant advertise or promote Plaintiff's services to patients outside of Colorado, including Utah.  (Docket entry #8-2, ¶ 7.)

In May 2006, Defendant sought to terminate the 2005 Contract.  Defendant's Chief Executive Officer, George Rohrich, sent a May 24, 2006 letter to Plaintiff's home in Craig.  (Docket Entry #8, May 24, 2006 Letter from The Memorial Hospital to F. Michael Crane.)  In the letter, Mr. Rohrich proposed that Defendant and Plaintiff mutually agree to terminate Plaintiff's 2005 Contract on June 1, 2006, without liability to either party. (Docket Entry #8-5.)  On April 4, 2006, Plaintiff had taken a voluntary leave of absence from the practice of medicine, and Defendant had not received any updated information regarding Plaintiff's plans to return to medical practice in Craig since that date.  (Docket Entry #8-5.)  In the May 24 letter, Mr.

4

Rohrich informed Plaintiff that if he did not accept mutual termination, Defendant would consider the 2005 Contract terminated effective June 1, 2006.  (Docket Entry #8-5.)

Plaintiff sent a reply letter dated May 27, 2006.  (Docket Entry #8-6, May 27, 2006 Letter from Dr. Crane to George Rohrich.)  The letter is printed on Plaintiff's letterhead and lists Plaintiff's practice address in Craig.  (Docket Entry #8-6.)  In the letter, Plaintiff declines Defendant's request to mutually terminate the 2005 Contract.  (Docket Entry #8-6.)

Plaintiff's license to practice medicine was summarily suspended by the BME in a May 30, 2006 Order.  (Docket Entry #8-7, Order of Suspension from the Practice of Medicine, Pursuant to Section 12-36-118(9)(A), C.R.S.)

Because Plaintiff did not accept mutual termination of the 2005 Contract, Defendant considered the 2005 Contract terminated on June 1, 2006.  In a June 1, 2006 letter, Defendant confirmed termination of the 2005 Contract.  (Docket Entry #8-8, Letter from The Memorial Hospital to Dr. Crane.)  In the June 1 letter, Mr. Rohrich stated that the basis for the termination was frustration of purpose because Plaintiff had been unable to fulfill the terms of the 2005 Contract since April 4, 2006.  (Docket Entry #8-8.)  The June 1 letter states that since April 4, 2006, Plaintiff had not maintained a full time practice, had not maintained an active call schedule, and had not performed

5

certain administrative services, all of which were required under Section 3.01 of the 2005 Contract. (Docket Entry #8-8.)

On June 2, 2008, Plaintiff filed his complaint against Defendant in this court. (Docket Entry #1.) The case was originally assigned to United States Magistrate Judge Paul M. Warner, but was later reassigned to United States Judge Dale A. Kimball, who referred it to United States Magistrate Judge Samuel Alba, pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket Entries #1, 14, 17.)

Defendant filed its Motion to Dismiss on July 9, 2008. (Docket Entry #7.) Plaintiff filed his memorandum opposing the motion on August 27, 2008. (Docket Entry #16.) On November 25, 2008, the court heard oral arguments on Defendant's Motion to Dismiss. (Docket Entry #28.)

Plaintiff then filed his Motion for Leave to File Supplemental Memorandum on December 16, 2008, and an accompanying affidavit. (Docket Entries #25, 26.) Defendant opposed Plaintiff's motion on December 24, 2008. (Docket Entry #27.)

**ANALYSIS**

The court first addresses Plaintiff's motion to file a supplemental memorandum. The court then addresses Defendant's motion to dismiss.

### I. Plaintiff's Motion to File a Supplemental Memorandum

In his motion to file a supplemental memorandum, Plaintiff seeks to submit a new legal memorandum and an affidavit. (Docket Entries #25, 26.)

Plaintiff is proceeding *pro se*, and therefore the court construes his pleadings liberally and holds his pleadings to a less stringent standard than formal pleadings drafted by lawyers. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). However, Plaintiff is still obligated to follow the court's rules and the Federal Rules of Civil Procedure.

Defendant's Motion to Dismiss was fully briefed in August 2008. (Docket Entries #7, 8, 16, 18.) The court held a hearing on the motion on November 25, 2008. (Docket Entry #28.) At that hearing, Plaintiff gave the court an affidavit, which he also filed that day with the court. (Docket Entry #22.) Also at the hearing, the court told Plaintiff it would give him until December 8, 2008, to file certain information Plaintiff told the court he thought he could obtain. On December 8, rather than filing the information requested by the court, Plaintiff filed the motion for leave to file the supplemental memorandum, along with another new affidavit. (Docket Entries #24, 25, 26.) Defendant opposed Plaintiff's motion. (Docket Entry #27.)

Plaintiff's memorandum, along with the affidavit, is essentially a surreply. Plaintiff's new memorandum is simply another attempt by Plaintiff to brief the facts and law of this

7

case and argue against Defendant's motion to dismiss.  This court's rules allow parties to file a motion, a response, and a reply, *See* DUCivR 7-1(b)(3)(B); surreplies, on the other hand, are typically not allowed.  *See, e.g., King v. Knoll*, 399 F. Supp. 2d 1169, 1174 (D. Kan. 2005).  Instead, surreplies are permitted only in rare cases where a movant improperly raises new arguments in a reply.  *See id.*  In its Reply Memorandum, Defendant did not assert any new legal theories that would give rise to an argument that Plaintiff has somehow been prevented from adequately addressing.

As a result, the court denies Plaintiff's motion for leave to file a supplemental memorandum.

## II.  Defendant's Motion to Dismiss

The court next turns to Defendant's Motion to Dismiss. Defendant argues that Plaintiff's complaint should be dismissed for lack of personal jurisdiction and improper venue.  *See* Fed. R. Civ. P. 12(b)(2) & 12(b)(3).  The court first addresses Defendant's argument regarding lack of jurisdiction.

### A.  Personal Jurisdiction

As a civil plaintiff, Plaintiff bears the burden of establishing the court has personal jurisdiction over Defendant. *See First Mortgage Corp. v. State Street Bank & Trust Co.*, 173 F. Supp. 2d 1167, 1170 (D. Utah 2001).  To defeat a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff must make only a prima facie case of personal

jurisdiction.  *See id.*  The plaintiff's prima facie case may be made through well-pleaded facts in the complaint or in supporting affidavits.  *See id.*  "'The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.'" *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988) (citation omitted).

In a diversity action, such as this case, personal jurisdiction is determined by the laws of the forum state.  *See Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990).  Therefore, this court must apply the law of Utah, the forum state, in determining whether personal jurisdiction exists in this case. To find personal jurisdiction over a foreign defendant, the court must find jurisdiction based on the state's long-arm statute or another applicable state statute.  *First Mortgage Corp.*, 173 F. Supp. 2d at 1173.  Personal jurisdiction must also comport with federal due process, meaning that Defendant must have sufficient contact with Utah such that requiring Defendant to litigate in the state would not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

Utah courts may apply either general or specific personal jurisdiction.  *See Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992).  To have general jurisdiction, a defendant must be conducting substantial and continuous local activity in the forum state.  *See id.*  The Tenth Circuit has listed several factors to consider in determining whether a defendant is conducting substantial and continuous local activity, including whether the defendant is:  1) engaged in business in this state; 2) licensed to do business in this state; 3) owning, leasing, or controlling property or assets in this state; 4) maintaining employees, offices, agents, or bank accounts in this state; 5) present in that shareholders reside in this state; 6) maintaining phone or fax listings within this state; 7) advertising or soliciting business in this state; 8) traveling to this state by way of salespersons, etc.; 9) paying taxes in this state; 10) visiting potential customers in this state; 11) recruiting employees in this state; or 12) generating a substantial percentage of its national sales through revenue generated from in-state customers.  *See Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295-96 (10th Cir. 1999).

Defendant does not have a sufficient presence in Utah to establish general personal jurisdiction.  Defendant is licensed under Colorado law and does business solely in Craig, Colorado and the surrounding area.  Plaintiff has not alleged that Defendant is licensed to do business in Utah, owns property in

Utah, maintains employees in Utah or meets any other basis to assert general personal jurisdiction except for his implicit allegation that Defendant recruits employees in Utah.  Although Plaintiff alleges that he was made a job offer while in Utah, and that Utah residents are welcome to apply for jobs with Defendant, Plaintiff alleges no facts to suggest that Defendant actively recruits employees from Utah.  Plaintiff also alleges that Defendant occasionally serves patients from Utah; however, those infrequent, attenuated contacts do not reach the level of substantial and continuous local activity necessary for this court to assert general personal jurisdiction over Defendant.  There is no basis for establishing general jurisdiction in Utah over Defendant.

Because the court lacks general jurisdiction, it next examines whether it has specific jurisdiction.  This type of personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state.  *See Arguello*, 838 P.2d at 1122.  In this case, those alleged activities are the formation, execution, and alleged breach of the employment contract between Plaintiff and Defendant.  "'In Utah, a three-part inquiry is used to determine whether specific personal jurisdiction exists:  (1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a "nexus" must exist between the plaintiff's claims and the defendant's acts or contacts; and (3)

application of the Utah long-arm statute must satisfy the requirements of federal due process.'" *First Mortgage Corp.*, 173 F. Supp. 2d at 1173 (quoting *Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc.*, 883 F. Supp. 608, 612-13 (D. Utah 1995)). Furthermore, the Utah long-arm statute provides that it intends to "assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78-77-22. As a result, Utah courts "frequently make a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII Megadiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998). Thus, the court first looks to whether the requirements of due process would be met if this court were to exercise its jurisdiction under the Utah long-arm statute.

    To meet the requirements of due process, the court must first determine whether minimum contacts exist between the nonresident defendant and the forum state. *See Burger King*, 471 U.S. at 472. If the nonresident defendant's actions do create sufficient minimum contacts, the court must then determine whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice. *See First Mortgage Corp.*, 173 F. Supp. 2d at 1173.

Therefore, the court first examines whether minimum contacts exist between Defendant and Utah. "A defendant's contacts are sufficient if the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State.'" *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This requirement ensures "that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475. Instead, "[t]he defendant must have 'deliberately' created some relationship with the forum state that would serve to make that state's potential exercise of jurisdiction foreseeable." *First Mortgage Corp.*, 173 F. Supp. 2d at 1173. Thus, the court examines whether Plaintiff's claim regarding his contract arose out of or resulted from actions by Defendant that created a sufficient connection with Utah.

With respect to Plaintiff's claim, Defendant has done nothing to purposefully avail itself of the privileges of conducting activities within Utah. It has not, as required by this court in *First Mortgage Corp.*, deliberately created a relationship with Utah that would make jurisdiction foreseeable. The contract at issue, the 2005 Contract, was negotiated, signed, performed, and allegedly breached entirely in Colorado. Both Plaintiff and Defendant were residents of Colorado throughout the entire period of the 2005 Contract. Additionally, the language

13

of the 2005 Contract does not contemplate a relationship with any state besides Colorado.  The 2005 Contract states that it "wishes to assist [Plaintiff] in the maintaining of a full-time practice . . . in Craig and for *Northwest Colorado*," (Docket #8-4, emphasis added), and that Plaintiff is required to reside in Moffat County, Colorado and maintain a Colorado medical license.  (Docket #8-4).  Indeed, the 2005 Contract only contemplates service in Colorado primarily to Colorado residents.  No part of the 2005 Contract involves Utah, or creates any relationship between Defendant and Utah.

Plaintiff alleges contacts between Defendant and Utah in the negotiation and formation of the 2003 Contract.  However, Plaintiff admits that the 2005 Contract was not a mere extension of the 2003 Contract, but a separate agreement for a different and expanded set of duties.  (Docket Entry #16, at 2.)  Hence, any contact with Utah made during the negotiation of the 2003 Contract will not be considered here, since that contract is not at issue.[1]  Without any relationship with Utah, Defendant does not

---

[1] However, even if the court were to consider the 2003 Contract, it did not create the type of relationship with Utah that the Supreme Court contemplated in *Burger King*, but instead consisted of a single, attenuated contact with a Utah resident who, upon execution of the contract, moved to Colorado to perform it.  In *Burger King*, the court placed emphasis on the contract, creating a continuing relationship between Florida and non-residents.  *See Burger King*, 471 U.S. at 473.  In this case, although the 2003 Contract was negotiated while Plaintiff was a Utah resident, the negotiations principally occurred in Colorado.  Defendant even arranged Plaintiff's travel to Colorado to negotiate.  Additionally, the 2003 Contract did not create a

14

have the minimum contacts necessary to establish jurisdiction in this state. Therefore, to assert jurisdiction would violate Defendant's federal due process rights.

The second part of the due process analysis involves balancing several "fairness factors" as laid out in *Burger King*. *See* 471 U.S. at 477. These include the potential burden on a defendant of litigating in a foreign field, the forum state's interest in the case, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interests in obtaining the most effective resolution to controversies and furthering fundamental social policies. *See id.*

In this case, none of these factors weigh substantially in Plaintiff's favor so as to overcome the bar of minimum contacts. Plaintiff's interest in convenient and effective relief is offset substantially by the burden on Defendant to litigate in a foreign field. Although Plaintiff claims that he cannot afford to litigate in Colorado (Docket Entry #16, at 8) (and that he feels he will not be treated as fairly in Colorado (Docket Entry #16, at 8-9)), Defendant faces similar costs in litigating in Utah. Certainly, Colorado has a greater interest in enforcing contracts

---

continuing relationship with Utah because the contract intended - indeed required - Plaintiff to move to Colorado, which he did. The contacts Defendant had with Utah, in contacting Plaintiff in Utah to extend an offer for Plaintiff to work for Defendant were attenuated, and did not create a sufficient relationship with Utah.

15

made within that state than does Utah.  There is also nothing to suggest that the interstate justice system would be adversely affected if this case were litigated in Colorado, nor would it be advanced if the case were litigated in Utah.  The factors, when taken together, do not tip the balance in favor of litigation in Utah.  When considered along with the few contacts that Defendant has had with Utah, the balance lies greatly toward litigation in Colorado.

Because Plaintiff has failed to allege any facts that allow this court to establish specific personal jurisdiction over Defendant, the court recommends that Defendant's motion should be granted.[2]

---

[2] Even were the court to grant Plaintiff's Motion For Leave to Amend, it would not change the outcome of the court's recommendation regarding Defendant's motion to dismiss.  The facts alleged in the memorandum and affidavit Plaintiff seek to file simply do not create the contacts necessary for personal jurisdiction.  In the December 6, 2008 affidavit, Plaintiff alleges that he signed the 2003 Contract in Utah, thus creating the last act necessary to constitute business in Utah.  However, this one act does not create a continuing and lasting relationship between Defendant and Utah.  Upon signing the contract, Plaintiff moved to Craig.  Furthermore, the contract at issue in this case is the 2005 Contract, not the 2003 Contract, and the 2005 Contract was negotiated and executed solely in Colorado.  In addition, Plaintiff's allegations of service to Utah patients have little bearing on this case.  First, Plaintiff lists only a few incidents where patients from Utah were treated by Defendant.  While he alleges that Defendant encouraged him to bring his former patients from Utah to the hospital (a point which Defendant denies), these contacts were few, and the accompanying transactions occurred in Colorado.  The contacts were not enough to establish general personal jurisdiction, and since the present action did not arise out of those contacts, they hold no bearing on the court's determination of personal jurisdiction.

**B. Venue**

Defendant also argues that the case should be dismissed for improper venue.

Because this action is based upon diversity jurisdiction, the applicable provision of the federal venue statute is 28 U.S.C. § 1391(a), which provides as follows:

> *Section 1391. Venue Generally.*
> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be only brought in (1) a judicial district where any defendant resides, . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

The court agrees with Defendant that the requirements of 28 U.S.C. § 1391(a) have not been met in this case. Defendant does not reside in Utah, the cause of action for breach of contract did not arise in Utah, and Defendant is not subject to personal jurisdiction in Utah, as discussed in the analysis above. First, under 28 U.S.C. § 1391(a)(1), domicile is the relevant criterion, and it is the domicile at the time of the action which controls. *See General Elec. Capital Corp. v. Selph*, 718 F. Supp. 1495, 1496 (D. Kan. 1989). Defendant is a county hospital formed under Colorado's laws, located in Craig, Colorado. It is therefore

considered to be domiciled in Colorado.  *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 318-19 (2006).

Second, the determination of where "the claim arose" for purposes of venue under § 1391(a)(2) is a federal question whose answer depends on federal law.  *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 183 n.15 (1979).  A claim arises in any district where a substantial number of acts giving rise to the claim occurred and where the injury occurred.  *See General Bedding Corp. v. Echevarria*, 714 F. Supp. 1142, 1146 (D. Kan. 1989).  In most cases, a claim arises only in one judicial district, and proper venue is not difficult to determine.  *See Leroy*, 443 U.S. at 184-85.  In this case, all the events that give rise to Plaintiff's complaint occurred in Colorado.  The 2005 Contract was negotiated, executed, and performed entirely in Colorado.  When Defendant entered the 2005 Contract with Plaintiff, Plaintiff was a Colorado resident, and remained a Colorado resident through the termination of the 2005 Contract. All acts related to the performance and termination of the 2005 Contract were performed in Colorado.  No event related to the 2005 Contract occurred in Utah.  In fact, Plaintiff did not change his residence to Utah until after the 2005 Contract was terminated.  Therefore, Plaintiff's claims arose in Colorado, not Utah.

Finally, Section 1391(a)(3) allows a civil action to be brought in a judicial district in which any defendant is subject

to personal jurisdiction, but only if there is no district in which the action may otherwise be brought.  In this case, not only is Defendant not subject to personal jurisdiction in Utah, as discussed above, but he also has not alleged any reason why the action could not be brought in Colorado's federal court.

In conclusion, Utah's federal court is not a proper venue for this action.

### ORDER

Based on the above analysis, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File a Supplemental Memorandum (Docket Entry #25) is **DENIED**.

### RECOMMENDATION

Furthermore, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry #7) be **GRANTED**.  The court lacks personal jurisdiction over Defendant and this court is not a proper venue for this action.

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same.  The parties are further notified that they must file any objections to the Report and Recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b),

within ten (10) days after receiving it.  Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 3rd day of March, 2009.

BY THE COURT:

_____
SAMUEL ALBA
United States Magistrate Judge